76 A.3d 1076

### Gail B. LITZ

v.

### MARYLAND DEPARTMENT OF THE ENVIRONMENT, et al.

No. 75, Sept. Term, 2012.

Court of Appeals of Maryland.

Sept. 26, 2013.

**624**

626

G. Macy Nelson (David S. Lynch and Michael I. Kroopnick of Law Office of G. Macy Nelson, LLC, Towson, MD; Philip

W. Hoon of Hoon & Associates, LLC, Chestertown, MD), on brief, for petitioner.

Steven R. Johnson, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for petitioner.

K. Nichole Nesbitt (Linda S. Woolf of Goodell, DeVries, Leech & Dann, LLP, Baltimore, MD), on brief, for respondents.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, McDONALD, and BELL *, JJ.

GREENE, J.

In the present case, we are asked to determine whether the Court of Special Appeals erred when it affirmed the grant of multiple defendants' motions to dismiss. Specifically, on appeal, we shall address whether the intermediate appellate court was correct that the motions to dismiss causes of action for trespass, negligence, nuisance, and inverse condemnation were properly granted because the causes of action were barred by the statute of limitations. We shall hold that the Court of Special Appeals was correct in determining that the statute of limitations barred Petitioner's nuisance counts because it is clear from the face of the Complaint that no reasonable trier of fact would infer that a temporary nuisance existed. We conclude, however, that it is unclear from the face of the Complaint (1) that Petitioner's causes of action for negligence and trespass were not for continuing tortious actions, or "a series of acts or course of conduct ... that would delay the accrual of a cause of action to a later date[,]" *MacBride v. Pishvaian,* 402 Md. 572, 585, 937 A.2d 233, 241 (2007) (citation omitted); and (2) whether Petitioner's cause of

---

* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

action for compensation for the denial of her reasonable and effective use of her property through inverse condemnation accrued more than three years before she filed a claim. We shall therefore hold that the Court of Special Appeals erred in determining that the statute of limitations barred Petitioner's causes of action for negligence, trespass, and inverse condemnation.

## FACTS AND PROCEDURAL BACKGROUND

In her Third Amended Complaint, Gail B. Litz ("Litz"), Petitioner, alleges the following:

Litz formerly owned approximately 140 acres of land ("the Litz Property") southeast of the town of Goldsboro, Maryland (the "Town" or "Goldsboro") in Caroline County (the "County"). In approximately 1948, Litz's parents purchased the Litz Property, which included a pond and a mill. Litz's parents replaced the mill with a dam in the mid–1950s to form a lake ("Lake Bonnie") for the irrigation of farm fields. Lake Bonnie primarily receives its water from two local streams, the Oldtown Branch and the Broadway Branch, and discharges a constant overflow of water directly into the Choptank River.

Lake Bonnie provided swimming, fishing, boating, and waterskiing opportunities, and in the 1960s, Litz's parents opened a public campsite business known as the Lake Bonnie Campsites (the "Campground"), which turned a profit for Litz's parents for many years. At some point, Litz became a partner with her father in the operation of the Campground, and in 2001, became the owner of the Litz Property. It was Litz's "intention and expectation that she would continue to own and operate the Campground as her primary occupation and source of income."

The Broadway Branch and the Oldtown Branch, which continue to supply water to Lake Bonnie, "form the backbone of" two public drainage associations (the "PDA systems") which were built between the 1950s and the 1970s. The PDA systems run directly up to, and in some cases into, the

incorporated limits of Goldsboro and are intended to drain the local fields. The PDA systems have also, however, "been informally used as storm water drainage systems for the Town, and have been used to remove waste[-]water from the Town." Water that enters the PDA systems eventually makes its way into the streams, and then into Lake Bonnie.

Goldsboro does not have a public water or sewer system available, and instead relies on private wells and septic systems. "Over time, [the private] septic systems in the Town contaminated the ground and surface water, which, in turn, contaminated Oldtown Branch and Broadway Branch, which, in turn, contaminated Lake Bonnie." Goldsboro has attempted to correct its "failing community sewage system" since at least 1973 when "the Town began a sewerage feasibility study."

In the 1980s, the Caroline County Health Department conducted studies, the results of which indicated the significant extent of the pollution and contamination problems caused by the sewage and waste-water. In both 1985 and 1988, residents of the Town rejected plans to address the problems, however, and "continued to oppose any action to improve the situation through 1996."

"The first documented contamination of Lake Bonnie" occurred in July 1991. Later, in September 1995, the Caroline County Health Department wrote to the Commissioners of the Town and warned that "[t]he use of the storm[-]water management system in the Town as a sewage system has gotten to crisis proportions[,]" and "[t]he system and associated ditches are a health hazard to the residents, which the commissioners must address." The letter further indicated that "[i]n particular, Lake Bonnie is not safe for swimmers as long as residents dump their waste[-]waters into the storm[-]water system." Noting that the "residents rejected grants available [in the 1980s] to provide a resolution of this problem[,]" the County Department of Health advised Goldsboro to "investigate sources of funding for the planning stage through the construction for [remedying the problem]." Additionally, in a December 1, 1995 letter, the Maryland Department of the

Environment, ("MDE") reported that "[t]here are actual water quality impacts on Lake Bonnie due to failing septic systems in [the Town]." Additionally, the letter explained that the Town was "identified in the 1980's as a potential candidate for federal grant funds to do sewer system improvements[,]" and stated that "[i]t now appears that the situation has deteriorated and created environmental concerns that will need to be addressed."

In a June 12, 1996 letter, the County Health Department notified Litz:

> The discharges of waste[-]waters to the Oldtown Branch and Broadway Branch (the headwaters [1] of Lake Bonnie) have not been eliminated. This continues to be a health threat for water contact recreation in the lake.... The [T]own was notified they had to eliminate all discharges. MDE was identifying all potential sources of money the [T]own could use to assist in the cost.

This information was confirmed by water samples taken from Lake Bonnie which showed that it was "severely polluted with high amounts of fecal coliform and nitrates." Additionally, Litz's residential well was impacted, containing "elevated nitrate levels."

On August 8, 1996, representatives from MDE and Goldsboro signed a Consent Order (the "Consent Order"). The Consent Order "explain[ed] the problems, order[ed] Goldsboro to take certain actions, impose[d] mandatory reporting obligations and specifie[d] penalties for non-compliance...."

Initially, the Town began to perform some of its obligations under the Consent Order. On January 21, 1997, Goldsboro sent MDE, among other things, "a Preliminary Engineering Report" and "the 'Compliance Plan' and projected schedule for construction of a public sewer system acceptable to MDE." There was little activity regarding the Consent Order between 1998 and 2004, however. In 2004, the Caroline County Health

---

1. A "headwater" is "the source of a stream." *Merriam–Webster's Collegiate Dictionary* 574 (11th ed.2005).

Department issued a warning to Goldsboro, along with other towns, that "they should not issue building permits without a Water and Sewer Allocation Request being approved by the County[.]"

As of October 1, 2010, the date Litz filed her Third Amended Complaint, "the Town ha[d] failed to comply with any of the material terms of the Consent Order and MDE ha[d] [failed to] enforce[ ] [any] part of it. As a result of the failure of the Town, the County[,] and MDE to address severe pollution problems, Lake Bonnie is now polluted, the [C]ampground has been destroyed, and Litz's property has been substantially devalued." Because the Campground was generating no income, Litz was unable to pay her mortgage on the Litz Property, and the bank foreclosed on the property and then purchased it at a foreclosure sale for $364,000.

On March 8, 2010, Litz filed a "Complaint for Compensatory Damages, Permanent Injunction, and Declaratory Judgment, and Request for Jury Trial" ("Original Complaint"). In the Original Complaint, Litz sought a permanent injunction against the Town and County. The Original Complaint further advanced causes of action for: (1) negligence, trespass, private nuisance, public nuisance, and inverse condemnation against the Town; (2) negligence, private nuisance, public nuisance, and inverse condemnation against the County; and (3) negligence and inverse condemnation against MDE.

Litz later filed an "Amended Complaint for Compensatory Damages, Permanent Injunction, and Declaratory Judgment, and Request for Jury Trial" ("Amended Complaint"), where she added one count against MDE "for mandamus or equitable relief in accordance with the Environmental Standing Act[,]" [2] and then, on July 27, 2010, filed a "Second Amended Complaint for Compensatory Damages, Permanent Injunction, and Declaratory Judgment, and Request for Jury Trial" ("Second Amended Complaint"), where she added the Department

---

**2.** The Maryland Environmental Standing Act is codified in Md.Code (1973, 2005 Repl.Vol., 2010 Cum.Supp.), § 1–501 *et seq.* of the Natural Resources Article.

of Health and Mental Hygiene ("DHMH") and the State of Maryland (through the Treasurer of the State) as defendants in the case. In total, the Second Amended Complaint contained the following causes of action:

Count I—Permanent injunction action against the Town, County, DHMH and State

Count II—Environmental Standing Act action against MDE

Count III—Negligence action against the Town, County, DHMH, and State

Count IV—Negligence action against MDE

Count V—Trespass action against the Town, County, DHMH and State

Count VI—Private nuisance action against the Town, County, DHMH and State

Count VII—Public nuisance action against the Town, County, DHMH and State

Count VIII—Inverse condemnation action against the Town, County, MDE, DHMH and State

On September 13, 2010, a hearing ("Hearing I") was held in the Circuit Court for Caroline County to address motions to dismiss filed by the defendants, including MDE, DHMH, and the State (collectively the "State defendants"). At the end of the hearing, the trial judge, on the record, dismissed all counts against the State defendants on the ground that the State was protected by sovereign immunity and Litz failed to comply with the requirements of the Maryland Tort Claims Act ("MTCA").[3] He also granted the County's Motion to Dismiss all counts on the grounds that any claim against the County would be against the County Health Department, which was for the purposes of the present case a State agency. Thereafter, the trial judge issued an Order, in accordance with his earlier pronouncements at Hearing I, granting the County and State defendants' motions to dismiss.

---

**3.** The MTCA is codified in Md.Code (1984, 2009 Repl.Vol., 2010 Cum. Supp.), § 12–101 *et seq.* of the State Government Article.

With regard to the Town, however, the trial judge announced that he was unable, at that time, to rule on Goldsboro's Motion to Dismiss the Second Amended Complaint. He invited counsel for Litz to file a response to the Town's Motion to Dismiss and Goldsboro to reply and indicated that "[o]nce we have those pleadings before the [c]ourt, we will schedule another hearing so that we can address the only issues presented in the Motion to Dismiss, the opposition to that Motion to Dismiss and the reply."

On September 22, 2010, Litz moved for the trial court to reconsider dismissing the trespass, private nuisance, public nuisance, and inverse condemnation counts against the State defendants. On October 1, 2010, Litz filed an opposition to the Town's Motion to Dismiss the Second Amended Complaint. Also on October 1, Litz filed a "Third Amended Complaint for Compensatory Damages, Permanent Injunction, and Declaratory Judgment, and Request for Jury Trial" ("Third Amended Complaint"). In the Third Amended Complaint, Litz asserted the same causes of action against the same defendants as in the Second Amended Complaint, adding only additional facts.

On October 19, 2010, the Town filed a Motion to Dismiss the Third Amended Complaint. On November 5, 2010, Litz filed an opposition to the Town's Motion to Dismiss, to which Goldsboro replied on November 24, 2010. On February 7, 2011, an Order was issued dismissing all of the counts against the County and the State.

On April 7, 2011, the trial judge presided over a hearing ("Hearing II") on the Town's Motion to Dismiss the Third Amended Complaint. During Hearing II, Litz also presented arguments in support of her motion for the trial judge to reconsider dismissing the counts against the State defendants.

Four days later, on April 11, 2011, the trial judge issued an order denying Litz's Motion for Reconsideration. Also on April 11, the trial judge issued a second Order dismissing the State and County defendants "as defendants in all counts in the Third Amended Complaint[,]" and granting Goldsboro's

Motion to Dismiss the Third Amended Complaint without leave for Litz "to further amend."

Thereafter, the trial judge issued a Memorandum explaining his Orders. He stated that because the counts against the County and State defendants had been previously dismissed and Litz's Motion for Reconsideration was denied, "the action against [the State defendants and County] is no longer viable." He, therefore, dismissed all counts against those parties "with prejudice and without leave to amend." The trial judge then addressed the Town's Motion to Dismiss the Third Amended Complaint. After dismissing the claim for an injunction on the grounds that Litz had lost the Litz Property through foreclosure and the Town "lacks the capacity to restore her to ownership of Lake Bonnie[,]" the trial judge dismissed all other causes of action against the Town as untimely. He expressed: (1) "[t]he remaining counts of the Third Amended Complaint sound in tort"; (2) "[e]ach remaining count alleging a tort by Goldsboro is subject to the same statute of limitations"; (3) pursuant to Section 5–101 of the Courts and Judicial Proceedings Article,[4] Litz was required to "bring her claim for damages occasioned by the tortious conduct of Goldsboro before a court within three years of the accrual of the action"; (4) the latest the actions could have accrued was when she took sole possession of the property in 2001; and (5) therefore, her causes of action, filed in 2010, are "time barred and cannot be maintained."

On May 5, 2011, Litz filed a Notice of Appeal. On appeal, Litz challenged the dismissal of the inverse condemnation claim against the State defendants and the Town.[5] Additional-

---

**4.** Md.Code (1973, 2006 Repl.Vol., 2010 Cum.Supp.), § 5–101 provides: "A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."

**5.** In her brief to the Court of Special Appeals, Litz argued that the trial court erred when it held that: (1) "inverse condemnation was a tort and that Litz's failure to provide timely notice in accordance with the [MTCA] barred her claim for inverse condemnation against the State Defendants"; (2) "the statute of limitations barred Litz's claim for

ly, Litz challenged the dismissal of the negligence, trespass and nuisance counts against the Town. Litz did not, however, challenge the dismissal of any other counts against the State defendants, Goldsboro, or the County.

The Court of Special Appeals, in an unreported opinion, affirmed the judgment of the trial court granting all motions to dismiss. Although the trial court dismissed the counts against the State defendants based on Litz's "noncompliance" with the MTCA, the Court of Special Appeals affirmed the trial court's dismissal of all counts based upon the "much narrower ground ... that all of Litz's claims are barred by the statute of limitations." Because the intermediate appellate court affirmed the trial court's granting of the motions to dismiss on limitations grounds, the court did not address any other basis asserted by the Town or the State defendants that would have supported the dismissal of the negligence, nuisance, trespass, and inverse condemnation causes of action.[6]

Thereafter, Litz filed a petition for *certiorari* to this Court, which we granted. *Litz v. Maryland Dept. of Environment*, 429 Md. 81, 54 A.3d 759 (2012). We have rephrased the

---

inverse condemnation against the Town"; and (3) "the statute of limitations barred Litz's counts for continuing negligence, continuing temporary nuisance and continuing trespass against the Town because Maryland law allows Litz to recover damages that she sustained within three years of the date she filed suit."

**6.** The State defendants asserted that the Court of Special Appeals should affirm the dismissal "on far simpler grounds." Namely, the State defendants argued that the dismissal of the inverse condemnation claim could be affirmed because Litz did not allege any facts which, if proven, would establish that any acts by the State was the proximate cause of an "alleged taking" and the statute of limitations barred the claim. In addition to contending that Litz's causes of action for negligence, nuisance, trespass, and inverse condemnation were barred by the statute of limitations, the Town maintained that: (1) Litz failed to properly state a claim for inverse condemnation against the Town; (2) Goldsboro is entitled to "governmental immunity" for all counts against it; (3) Litz failed to comply with the notice requirement of the Local Government Tort Acts; (4) Litz did not allege facts necessary to establish that the Town owed a duty to Litz; and (5) Litz lacked standing to bring an enforcement action against the Town. None of these issues, however, were addressed by the Court of Special Appeals.

underlying questions posed by Litz for purposes of clarity and brevity: [7]

1. Whether it was in error for the Court of Special Appeals to conclude that Litz's cause of action for nuisance was for a permanent nuisance that was barred by the statute of limitations.

2. Whether it was in error for the Court of Special Appeals to conclude that the negligence and trespass causes of action against the Town were not for ongoing tortious actions, and were barred by the statute of limitations.

3. Whether it was in error to conclude on the basis of a motion to dismiss that Litz's inverse condemnation causes of action against both the Town and State defendants could be dismissed on the grounds of limitations.

## STANDARD OF REVIEW

At issue in the present case is the Court of Special Appeals's decision to affirm the trial judge's grant of motions to dismiss pursuant to Maryland Rule 2–322.[8] In *Converge*

---

**7.** Litz's *certiorari petition presented the following questions:* "(1) Whether Maryland's statute of limitations bars a claim against a defendant who has continuously and on a daily basis contaminated surface and groundwater for longer than three years, and who continues to contaminate that water[;] (2) Whether groundwater contamination that polluted [Litz's] lake is a permanent nuisance notwithstanding that the Defendants had entered into a Consent Order which required the Town to abate the nuisance[:] (3) Whether [Litz's] cause of action for inverse condemnation accrued when her lake was first polluted in 1996 or when the bank foreclosed on her property in 2010[; and] (4) Whether the [Court of Special Appeals] erred when it held that 'Litz has pled only the ongoing adverse consequence of [the defendants'] alleged wrongdoing, but has not shown a 'series of acts or course of conduct' that could toll the statute of limitations."

**8.** It is clear that the trial judge addressed the defendants' requests to dismiss the case as motions to dismiss. During Hearing I, all of the defendants agreed that the judge should address their filings as motions to dismiss, not motions for summary judgment, and when counsel for Litz began to address facts outside the "four corners of the complaint," the trial court stopped him, noting that the case was not "ripe" for summary judgment. Additionally, there is nothing in the trial court's findings that indicates that he considered facts outside the Complaint.

*Servs. Grp., LLC v. Curran,* 383 Md. 462, 860 A.2d 871 (2004), we described the lens through which appellate courts should review motions to dismiss.

In our review of the grant of a motion for dismissal ... we accept all well-pled facts in the complaint, and reasonable inferences drawn from them, in a light most favorable to the non-moving party. Typically, the object of the motion is to argue that as a matter of law relief cannot be granted on the facts alleged. Thus, consideration of the universe of "facts" pertinent to the court's analysis of the motion are limited generally to the four corners of the complaint and its incorporated supporting exhibits, if any.

383 Md. at 475, 860 A.2d at 878–79 (citations omitted); *see also D'Aoust v. Diamond,* 424 Md. 549, 572, 36 A.3d 941, 954 (2012). We have also noted that "dismissal is proper only if the alleged facts and permissible inferences, so viewed, would, if proven, nonetheless fail to afford relief to the plaintiff." *Arfaa v. Martino,* 404 Md. 364, 380–81, 946 A.2d 995, 1005 (2008) (citations omitted).

## DISCUSSION

As indicated above, the Court of Special Appeals affirmed the trial court's grant of the State defendants' and the Town's motions to dismiss based on the intermediate appellate court's conclusion that all causes of action were barred by the statute of limitations. This Court granted Litz's petition for certiorari which presented questions pertaining to whether Litz's causes of action for public and private nuisance, trespass, negligence, and inverse condemnation against the Town and inverse condemnation against the State defendants were barred by limitations. There were no cross-petitions filed raising other issues. Therefore, the focus of this opinion is on the narrow issue upon which we granted certiorari; namely, whether the Court of Special Appeals was correct in its conclusion that those causes of action were untimely. We also do not address whether there are other grounds upon which the Court of Special Appeals could have affirmed the trial judge's grant of the motions to dismiss Litz's causes of action. As we noted in

*Garner v. Archers Glen Partners, Inc.,* 405 Md. 43, 949 A.2d 639 (2008):

> Since the time when this Court's jurisdiction became largely dependent upon the issuance of a writ of certiorari, we have consistently held that, in a case decided by an intermediate appellate court, we shall not consider an issue unless it was raised in a certiorari petition, a cross-petition, or the order by this Court granting certiorari. We again decline to address an issue not raised fairly in an otherwise successful Petition for Writ of Certiorari.

405 Md. at 60–61, 949 A.2d at 649 (citations omitted). *See also* Md. Rule 8–131(b) ("Unless otherwise provided by the order granting the writ of certiorari, in reviewing a decision rendered by the Court of Special Appeals ... the Court of Appeals ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Court of Appeals.").

■ Counts for negligence, trespass, and inverse condemnation are subject to the statute of limitations articulated in Section 5–101 of the Courts and Judicial Proceedings Article of the Maryland Code which requires that a claim must be filed within three years from the date the action accrues. *See Electro-Nucleonics v. Washington Suburban Sanitary Comm'n,* 315 Md. 361, 372–73, 554 A.2d 804, 809–10 (1989) (applying § 5–101 to an inverse condemnation claim); *Booth Glass Co. v. Huntingfield Corp.,* 304 Md. 615, 500 A.2d 641 (1985) (applying § 5–101 to a negligence action); *Bacon v. Arey,* 203 Md.App. 606, 620 n. 12, 651–52, 40 A.3d 435, 444 n. 12, 462–63 (2012) (applying § 5–101 to causes of action for, among other things, trespass). Similarly, counts for a permanent nuisance are also subject to Section 5–101's three-year statute of limitations. *See Goldstein v. Potomac Elec. Power Co.,* 285 Md. 673, 689, 404 A.2d 1064, 1072 (1979). In determining when the actions accrue, Maryland courts apply the discovery rule, which tolls the accrual of an action until the plaintiff knows or should have known of the injury giving rise to his or her claim. *See Poffenberger v. Risser,* 290 Md. 631,

636, 431 A.2d 677, 680 (1981); *see also Hecht v. Resolution Trust Corp.,* 333 Md. 324, 334, 635 A.2d 394, 399 (1994).

▉▉▉ The question of when a cause of action accrues is ordinarily "left to judicial determination." *Frederick Road Ltd. P'ship v. Brown & Sturm,* 360 Md. 76, 95, 756 A.2d 963, 973 (2000). The determination of when an action accrued "may be based solely on law, solely on fact, or on a combination of law and fact." *Hecht,* 333 Md. at 334, 635 A.2d at 399. When it is necessary to make a factual determination to identify the date of accrual, however, those factual determinations are generally made by the trier of fact, and not decided by the court as a matter of law. *See O'Hara v. Kovens,* 305 Md. 280, 301, 503 A.2d 1313, 1323–24 (1986), and cases therein cited. Motions to dismiss are generally granted in cases where "there [is] no justiciable controversy[.]" *Broadwater v. State,* 303 Md. 461, 467, 494 A.2d 934, 937 (1985). Therefore, a motion to dismiss ordinarily should not be granted by a trial court based on the assertion that the cause of action is barred by the statute of limitations unless it is clear from the facts and allegations on the face of the complaint that the statute of limitations has run. *See Desser v. Woods,* 266 Md. 696, 703–04, 296 A.2d 586, 591 (1972) ("It is well settled that the defense[ ] of the bar of the statute of limitations . . . may only be availed of by demurrer to a bill of complaint when [it] appear[s] on the face of the bill of complaint, itself, and other matters not so appearing cannot be considered in determining whether or not these defenses are a bar to the alleged cause of action."); *see also Doe v. Archdiocese of Washington,* 114 Md.App. 169, 175, 689 A.2d 634, 637 (1997) ("If it is apparent from the face of the complaint that the action is barred by the statute of limitations, the complaint fails to state a claim upon which relief can be granted and the statute of limitations can be the grounds for a motion to dismiss."); *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir.2007) (stating that the "principle" that the affirmative defense that a claim is barred by the Maryland statute of limitations "may be reached by a motion to dismiss filed under [the Federal Rules of Civil Procedure] . . . only applies, however, if all facts necessary to

the affirmative defense clearly appear *on the face of the complaint*" (emphasis in original) (quotation and citation omitted)).

In the present case, the Court of Special Appeals concluded that all of Litz's causes of action against both the Town and State defendants were barred by the statute of limitations. The intermediate appellate court held that when Litz received a notice from the County Health Department on June 26, 1996, "specifically inform[ing] her that 'discharges of waste[-]waters' into the headwater of Lake Bonnie continued [to] 'be a health threat for water contact recreation' in the Lake[,]" Litz became "fully aware of the nature and cause of her injury—namely, the contamination and potential devaluation of her property and its business." The Court of Special Appeals, therefore, concluded that "June 26, 1996 was the accrual date of [Litz's] causes of action and Litz had three years, or until June 26, 1999, to file a complaint against those parties she deemed liable, or potentially liable, for her damages." The intermediate court, however, did not address any other basis for affirming the trial judge's decision to grant the motion to dismiss, such as compliance with the MTCA.

Limiting our review to the universe of the facts and allegations contained in Litz's Third Amended Complaint, assuming the truth of those allegations, and drawing all reasonable inferences in the light most favorable to Litz, we conclude that it was error to affirm the grant of the motions to dismiss Litz's causes of action for negligence, trespass, and inverse condemnation on the grounds of limitations, but we affirm the judgments of the Circuit Court and the intermediate appellate court in dismissing Litz's nuisance counts. The Court of Special Appeals, in reaching its conclusion that all of Litz's causes of action were untimely, focused on the idea that the "nature and cause" of Litz's injuries was "the contamination and potential devaluation" of Litz's property and business and that she knew about that when she received the letter from MDE in 1996 informing her about pollution in Lake Bonnie.

■ When reviewing a motion to dismiss, however, reasonable inferences are drawn in a light favorable to the non-moving party. *See RRC Ne., LLC. V. BAA Md., Inc.*, 413 Md. 638, 643, 994 A.2d 430, 433 (2010) ("Considering a motion to dismiss a complaint for failure to state a claim upon which relief may be granted, a court must assume the truth of, and view in a light most favorable to the non-moving party, all well-pleaded facts and allegations contained in the complaint, as well as all inferences that may reasonably be drawn from them, and order dismissal only if the allegations and permissible inferences, if true, would not afford relief to the plaintiff. . . ."). As discussed below, reasonable inferences viewed in a light favorable to Litz, indicate that her counts for negligence, trespass, and inverse condemnation are not barred by limitations, but her causes of action for nuisance are time-barred.

## I. Nuisance

■ In Counts VI and VII of the Third Amended Complaint, Litz alleges causes of action against the Town for a private nuisance and a public nuisance. As noted above, both the trial court and the Court of Special Appeals concluded that these counts against the Town were barred by limitations. We affirm the intermediate appellate court's judgment dismissing these counts. A reasonable trier of fact could not reasonably infer that a temporary nuisance occurred based on the facts as alleged.

■■ The distinction between a temporary and a permanent nuisance is relevant to the application of the statute of limitations to a nuisance claim. A claim for a permanent nuisance must be brought within three years of the date when "the permanency of the conditions causing the reduction in the market value of the land bec[omes] manifest to a reasonably prudent person[.]" *Goldstein v. Potomac Elec. Power Co.*, 285 Md. 673, 689, 404 A.2d 1064, 1072 (1979); *see also Hoffman v. United Iron and Metal Co.*, 108 Md.App. 117, 144, 671 A.2d 55, 68 (1996) ("[A] suit for damages as a result of a permanent nuisance must be brought within three years of the time that

the permanency of the condition becomes manifest to a reasonably prudent person."). For a temporary nuisance, however, "successive actions may be brought for damages for each invasion of the plaintiff's land until the period of prescription has elapsed, but recovery may only be had for damages actually sustained, other than permanent reduction in the market value of the property, within three years of the filing of the action." *Goldstein*, 285 Md. at 690 n. 4, 404 A.2d at 1072 n. 4. This is because "[w]here a nuisance is temporary and abatable, every repetition of the wrong creates further liability and creates a new cause of action, and a new statute of limitations begins to run after each wrong perpetuated." *Jones v. Speed*, 320 Md. 249, 260 n. 4, 577 A.2d 64, 69 n. 4 (1990). At issue in the present case is whether Litz's allegation of nuisance was for a temporary nuisance giving rise to damages within the three years prior to her filing a claim.

■ Whether a nuisance is permanent or temporary is determined by whether it is abatable. A temporary nuisance is one that is abatable, *Carroll Springs Distilling Co. v. Schnepfe*, 111 Md. 420, 428, 74 A. 828, 830 (1909), and a permanent nuisance "will be presumed by its character and circumstances to continue indefinitely." *Hoffman*, 108 Md.App. at 143, 671 A.2d at 68. The pertinent question, however, "is not the *possibility* of abatement but rather it's *likelihood.*" *Hoffman*, 108 Md.App. at 144, 671 A.2d at 68 (emphasis in original) (quotation omitted).

■ In the present case, the Court of Special Appeals concluded in a footnote at the end of its opinion that "[t]he facts make clear that the nuisance, if any, was permanent." We agree with this conclusion. Litz failed to show that the lower courts erred when they concluded that her nuisance causes of action were barred by the statute of limitations. The pertinent facts supporting this conclusion are as follows: The Town entered into a Consent Order with MDE on August 8, 1996. Pursuant to that Order, the Town drafted and submitted a compliance plan to MDE on January 21, 1997. Over the next thirteen years, up until Litz's first Complaint

was filed on March 8, 2010, the Town did not comply with any other material terms of the Consent Order and MDE did not enforce any material terms of the Consent Order. Indeed, Litz's Complaint even admits that during this time, "the Town has failed to comply with any material terms of the Consent Order and MDE has enforced no part of it."

The only reasonable inference that can be drawn from these facts is that the nuisance was likely to continue indefinitely. In other words, if Litz's allegations are that her claim is for permanent nuisance, more than three years have passed since the accrual of this cause of action and a count for permanent nuisance is therefore time-barred. If Litz's allegations are for temporary nuisance, the facts alleged and reasonable inference drawn from those facts do not support such a claim and the Circuit Court and intermediate appellate court were correct to dismiss them.

## II. Negligence and Trespass

As noted above, the Court of Special Appeals held that all of Litz's causes of action against the Town, including the trespass and negligence actions, accrued in 1996 and are barred by the statute of limitations. The Town similarly argues in its brief to this Court that Litz's causes of action arise from the "property damage that resulted from actions or inactions that occurred—at the latest—by 1996, when the County Health Department notified [Litz] that contamination of Lake Bonnie rendered it unsafe for water contact recreation."

Litz argued to both the intermediate appellate court and to this Court that even if her causes of action initially accrued in the 1990s, because of the ongoing or continuing nature of the Town's tortious actions, Litz can recover damages from the tortious conduct during the three years prior to filing a claim against the Town in 2010. The Court of Special Appeals noted that in *MacBride v. Pishvaian*, 402 Md. 572, 937 A.2d 233 (2007), this Court held that the statute of limitations may be tolled for "continuing unlawful acts" but it is not tolled "merely [for] the continuing effects of a single earlier act." 402 Md. at 584, 937 A.2d at 240. The Court of Special Appeals

concluded that Litz pled "only the ongoing adverse consequences of [the Town's] original alleged wrongdoing," but did not plead "a series of acts or course of conduct that could toll the statute of limitations." (Quotation omitted). Applying *MacBride*, the intermediate appellate court concluded that, therefore, the accrual of Litz's causes of action, including trespass and negligence, was not tolled.

"[T]he 'continuing harm' or 'continuing violation' doctrine ... tolls the statute of limitations in cases where there are continuing violations." *MacBride*, 402 Md. at 584, 937 A.2d at 240. When a claimant brings a cause of action for continuing acts of negligence or trespass, we apply the same principle as with a temporary nuisance claim where "every repetition of the wrong creates further liability and creates a new cause of action, and a new statute of limitations begins to run after each wrong perpetuated." *Jones*, 320 Md. at 260 n. 4, 577 A.2d at 69 n. 4; *see also Consol. Pub. Utils., Co. v. Baile*, 152 Md. 371, 376, 136 A. 825, 827 (1927) (holding that the three year statute of limitations started anew once defendant's negligent conduct ceased). Therefore, "violations that are continuing in nature are not barred by the statute of limitations merely because one or more of them occurred earlier in time." *MacBride*, 402 Md. at 584, 937 A.2d at 240. Although an action for a continuing tort may not be barred by the statute of limitations, damages for such causes of action are limited to those occurring within the "three year period prior to the filing of the action." *Shell Oil Co. v. Parker*, 265 Md. 631, 636, 291 A.2d 64, 67 (1972); *see also Singer Co. v. BG & E*, 79 Md.App. 461, 476–77, 558 A.2d 419, 426 (1989) (noting that where negligence causes of action were "premised" upon the electric company's breach of "*ongoing* duties owed [to] its customers," causes of action for damages incurred "within three years of the commencement of the present action" were not barred by the statute of limitations (emphasis added)).

As noted above, the Court of Special Appeals relied on our decision in *MacBride* to conclude that the statute of limitations on Litz's causes of action was not tolled because she pled

only the "ongoing adverse consequences" of the initial tortious action rather than continuous tortious actions. In *MacBride*, the plaintiff brought a claim against her landlord for "damages stemming from the poor living conditions of the apartment she rented" from him. 402 Md. at 575–76, 937 A.2d at 235. At issue before this Court was whether the plaintiff's claim that the landlord employed "unfair and deceptive trade practices" was barred by the three-year statute of limitations. 402 Md. at 576, 937 A.2d at 235. We held that "[g]iven that the jury found that [the plaintiff] knew or should have known of the unfair and deceptive trade practices more than six years before she filed her complaint," limitations barred her claim. *Id.* This Court further rejected the plaintiff's assertion that even if she knew or should have known about the unfair and deceptive trade practices more than three years before she filed suit, the statute of limitations should be tolled by the "continuing harm rule." 402 Md. at 579, 585–86, 937 A.2d at 237, 241. We concluded that although the plaintiff may have suffered from an "ongoing harm," namely the "deteriorating condition of her apartment," her complaint alleges "merely the continuing ill effects from the original alleged violation, and not a series of acts or course of conduct that would delay the accrual of a cause of action to a later date." 402 Md. at 585, 937 A.2d at 240–41 (quotation omitted).

In the present case, we address the judgment of the Court of Special Appeals to affirm the trial judge's grant of motions to dismiss. The case has not yet been presented to a trier of fact to determine whether the only acts of negligence or trespass happened more than three years before Litz filed a claim, and the fact-finder has not had an opportunity to determine if the negligence or trespass actions were ongoing. Therefore, although the proposition in *MacBride* that the continuing harm doctrine tolls the statute of limitations in cases of ongoing trespass and negligence is applicable here, its facts and subsequent holding are distinguishable.[9]

---

9. The Court of Special Appeals additionally cited *MacBride* for the proposition that "the continuing violation doctrine, if applicable, would

In her cause of action for negligence, which is Count III of the Third Amended Complaint, Litz alleges that Goldsboro "had and has a duty to use reasonable care to control the discharge of ground and surface water onto Litz's property[,]" and "breached [its] duties by allowing the discharge of contaminated ground and surface water onto Litz's property." Additionally, in Litz's claim for a permanent injunction, the factual allegations of which were incorporated in the negligence cause of action, Litz alleges that "[t]he Town [and other defendants] improperly allow the discharge of contaminated ground and surface water onto Litz's property[,]" and that the defendants "continuously and artificially collect and channel ground and surface water and discharge those waters in unnatural and harmful quantities, qualities, and rates of flow onto Litz's property."

Several well-pleaded facts lend credence to Litz's contention that the statute of limitations does not bar her

not toll the statute of limitations if [Litz] *sooner knew or should have known of the injury or harm."* (Emphasis added). (Quotations omitted). The quoted language, specifically the phrase "sooner knew or should have known of the injury or harm," is a misstatement of law and having relied upon it, the Court of Special Appeals was misled. It is hereby disavowed and is not applicable to the continuing harm analysis. Because we had already determined that the continuing harm rule did not apply, this statement was inapplicable to our ultimate holding in *MacBride.* This *dictum* in *MacBride* effectively—and inadvertently— eliminated the continuing harm doctrine. The purpose of the continuing harm doctrine is to avoid punishing a plaintiff "because one or more [violations] occurred earlier *in time"* ... when such violations "are continuing in nature." 402 Md. at 584, 937 A.2d at 240; *see, e.g., Shell Oil Co. v. Parker,* 265 Md. 631, 634–36, 291 A.2d 64, 66–67 (1972) (holding that where Plaintiffs' harm, which had persisted for five or six years and which Plaintiffs knew about for that duration, was "continuing in nature" and their right to bring suit was "not barred by the three year Statute of Limitations for the continuing violation during the three year period prior to the filing of the action"). A potential plaintiff's knowledge of the harm, therefore, is inconsequential. To be sure, "the discovery rule does not impede the operation of the continuing-tort doctrine[,]" *Rhodes v. E.I. du Pont de Nemours & Co.,* 657 F.Supp.2d 751, 761 (S.D.W.Va.2009), *aff'd in part, appeal dismissed in part,* 636 F.3d 88 (4th Cir.2011), and the continuing harm doctrine tolls the statute of limitations regardless of a potential plaintiff's discovery of the wrong.

cause of action for negligence. As early as 1985, the Caroline County Department of Health informed the Town of its water contamination problems, stemming from "a precedent of dumping waste water directly into the storm water system (and therefore the PDAs and nearby streams)." Over ten years later, the health department again contacted the Town concerning its water contamination, and specifically cited Lake Bonnie, stating that the contamination had "gotten to crisis proportions." In 1996, Litz was notified of the contamination, and the Town entered into a Consent Order to remedy the problem, an order that had not been complied with as of the date this action was filed. Due to the Town's failure to comply with any material terms of the Consent Order, Lake Bonnie is polluted severely.

Drawing reasonable inferences in the light most favorable to Litz, a trier of fact could conclude that the Town's duties were ongoing and continuous. Litz's claim that Goldsboro "had and has" a duty to control the discharge of contaminated ground and surface water could assert an ongoing duty, and the allegation that the Town has "breached" its duties suggests that the Town has continuously breached this duty. This is especially true in light of the other incorporated allegations that Goldsboro "improperly allow[s] the discharge of contaminated ground and surface water onto Litz's property" and "*continuously*" discharges "ground and surface water ... in unnatural and harmful quantities, qualities, and rates of flow onto Litz's property." (Emphasis added). Nothing in the Complaint indicates that the Town's allegedly negligent actions ceased before March 2007, three years before Litz filed her cause of action in March 2010. Because a reasonable trier of fact could determine that the allegedly negligent actions by the Town were ongoing and continued to occur during the three years prior to Litz filing a claim, it is not clear on the face of the Complaint that the cause of action for negligence is barred by the statute of limitations. *See Desser*, 266 Md. at 703–04, 296 A.2d at 591.

In Count V of the Third Amended Complaint, the cause of action for trespass against the Town and other defendants, Litz maintains that Goldsboro and the other defendants "are invading and have invaded Litz's property by approving residential septic systems in the Town that channel polluted ground water and discharge those waters in unnatural quantities, qualities and rates of flow onto Litz's property." Although her cause of action for trespass appears to be in reference to the ongoing effects from the approval of the septic systems, drawing reasonable inferences in the light most favorable to Litz, we do not construe this allegation to assert that the Town on a single occasion approved a septic system in Goldsboro that has channeled polluted water onto her property. Additionally, there is nothing in the Complaint that indicates that the Town did not approve any septic systems within three years of Litz filing a claim in 2010. From the earlier allegations that the private septic systems all penetrated the groundwater, that they were contributing to contamination of the ground and surface water, that such water was channeled eventually into Lake Bonnie, and that the contamination problems continued over a long period of time, one could infer reasonably that approval of septic systems by the Town contributed to the continual flow of effluent from the Town to Lake Bonnie.

While facts may arise at a later stage that indicate that the Town did not approve of the construction of septic systems on an ongoing basis, or that Goldsboro did not approve of any septic systems in the three years before Litz brought her cause of action for trespass, from the face of her Complaint, it is not apparent that Litz's trespass count is barred by the statute of limitations. Therefore, it was improper to affirm the grant of a motion to dismiss based on limitations. *See Desser,* 266 Md. at 703–04, 296 A.2d at 591.

### III. Inverse Condemnation

As noted above, the Court of Special Appeals affirmed the trial court's dismissal of Litz's inverse condemnation counts against both the State defendants and the Town

because the intermediate appellate court concluded that the causes of action were barred by the statute of limitations. A cause of action for inverse condemnation must be filed within three years of the date the action accrues. *See Electro–Nucleonics v. Washington Suburban Sanitary Comm'n,* 315 Md. 361, 372–73, 554 A.2d 804, 809–10 (1989). The parties disagree whether the Court of Special Appeals was correct in its conclusion that Litz's inverse condemnation causes of action accrued in 1996. We hold that the Circuit Court and the intermediate appellate court erred in dismissing the cause of action for inverse condemnation on the grounds of limitations.

Litz asserts that her cause of action did not accrue until May 14, 2010, the date the bank foreclosed on the Litz property. Litz asserts that the defendants caused the pollution of the Litz Property which prevented Litz from operating the Campground profitably and, consequently, resulted in Litz's inability to pay her mortgage. Litz relies on federal inverse condemnation cases and "[g]eneral principles of Maryland law" for her argument that her cause of action accrued on the date of foreclosure. She cites *United States v. Dickinson,* 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947), *United States v. Dow,* 357 U.S. 17, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958), *Barnes v. United States,* 538 F.2d 865 (Ct.Cl.1976), and *Applegate v. United States,* 25 F.3d 1579 (Fed.Cir.1994) for the proposition that the date of accrual begins when "it bec[omes] apparent that the physical invasion had become permanent . . . or stabilized[.]"

The Town and the State both argue that the intermediate appellate court was correct that, if Litz put forth causes of action against them for inverse condemnation, they accrued in 1996. The State defendants note that in *Duke Street Ltd. P'ship v. Bd. of Cnty. Comm'rs of Calvert Cnty.,* 112 Md.App. 37, 684 A.2d 40 (1996), the Court of Special Appeals applied the discovery rule to an inverse condemnation cause of action and "held that 'a cause of action accrues when the affected party knew or should have known of the unlawful action and its probable effect[,]' " and that "[i]t is not necessary for the affected party to know the 'precise nature and amount of

economic impact' [for an inverse condemnation claim to accrue]." *Duke Street,* 112 Md.App. at 54, 684 A.2d at 49. Employing this principle, the State defendants assert that any cause of action Litz would have for inverse condemnation would have arisen more than three years before she filed her causes of action in 2010. The State defendants maintain that "by June 26, 1996, Litz was 'fully aware of the nature and cause of her injury—namely, the contamination and potential devaluation of her property and its business[,]' " and her cause of action accrued at that time.

 Thus, before us is the question of when Litz's cause of action for inverse condemnation accrued. As Judge Robert M. Bell, later Chief Judge of this Court, wrote for the Court of Special Appeals in *Millison v. Wilzack,* 77 Md.App. 676, 551 A.2d 899 (1989), an action for inverse condemnation accrues when both "all of its elements have occurred," *and* "the plaintiff knows, or, through the exercise of due diligence, should have known that they have occurred." 77 Md.App. at 685, 551 A.2d at 903 (citations omitted); *see also Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1577 (Fed.Cir.1988) ("Thus, for the purposes of [the statute of limitations in the United States Court of Federal Claims], it would appear more accurate to state that a cause of action against the government has first accrued only when all the events which fix the governments's alleged liability have occurred *and* the plaintiff was or should have been aware of their existence." (emphasis in original) (quotation omitted)); *cf. Berman v. Karvounis,* 308 Md. 259, 268, 518 A.2d 726, 730 (1987) (noting that the statute of limitations will not begin to run on a claim for malicious use of process until termination, one of the elements necessary to bring a cause of action, occurs); *Trimper v. Porter–Hayden,* 305 Md. 31, 42, 501 A.2d 446, 452 (1985) (expressing that a claim accrues when "all of the elements of a cause of action have occurred so that it is complete").

 Inverse condemnation is a taking without just compensation. *See College Bowl, Inc. v. Mayor of Baltimore,*

394 Md. 482, 489, 907 A.2d 153, 157 (2006) (expressing that an inverse condemnation claim is "a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted[,]" or "a cause of action against a governmental defendant to recover the value of property which has been *taken* in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency" (emphasis added) (citations omitted)). Thus, an inverse condemnation cause of action, at minimum, requires a taking by a government entity, and regardless of what the plaintiff knows or should know, the statute of limitations on an inverse condemnation cause of action does not begin to run until a taking has occurred.

The next logical inquiry is into what constitutes a taking. "That inquiry, by its nature, does not lend itself to any set formula, and the determination whether justice and fairness require that economic injuries caused by public action [must] be compensated by the government, rather than remain disproportionately concentrated on a few persons, is essentially ad hoc and fact intensive." *Eastern Enters. v. Apfel*, 524 U.S. 498, 523, 118 S.Ct. 2131, 2146, 141 L.Ed.2d 451, 471 (1998) (quotations omitted) (citation omitted). "The modern, prevailing view is that any substantial interference with private property which destroys or lessens its value (or by which the owner's right to its use or enjoyment is in any substantial degree abridged or destroyed) is, in fact and in law, a 'taking' in the constitutional sense, to the extent of the damages suffered, even though the title and possession of the owner remain undisturbed." *Md. Port Admin. v. QC Corp.*, 310 Md. 379, 387, 529 A.2d 829, 832 (1987) (citation omitted); *see also Hardesty v. State Rd. Comm'n of the State Hwy. Admin.*, 276 Md. 25, 32, 343 A.2d 884, 888 (1975) ("[N]ot every injury to property involves a taking, that compensation for a taking may be exacted only for severe interferences which are tantamount to deprivations of use or enjoyment, and that whether there has been a taking is dependent on the facts of each case."). That is not to say that a taking cannot occur because of a loss

of title, however. *See College Bowl,* 394 Md. at 489, 907 A.2d at 157 (holding that a taking "can take many forms, [such as] ... conduct that causes physical invasion of a property, ... [or] conduct that effectively forces an owner to sell.")

It is also important to note, particularly in this context, that a taking may be partial or complete. A partial taking is one in which "there would be an intrusion so immediate and direct as to subtract from the owner's full enjoyment of the property and to limit his exploitation of it." *U.S. v. Causby,* 328 U.S. 256, 265, 66 S.Ct. 1062, 1067–68, 90 L.Ed. 1206, 1212 (1946). The measure of damages for such a taking may be calculated by "the actual value of the part taken plus any severance or resulting damages to the remaining land by reason of the taking and of future use by the plaintiff of the part taken." *Washington Suburban Sanitary Comm'n v. CAE–Link Corp.,* 330 Md. 115, 151, 622 A.2d 745, 763 (1993) (citation omitted); *see Reichs Ford Rd. Joint Venture v. State Rds. Comm'n of the State Hwy. Admin.,* 388 Md. 500, 522–23, 880 A.2d 307, 320 (2005) (noting that " 'just compensation' [includes] the recovery of lost rents and other damages to an interest in the real property prior to the actual condemnation ... [to] protect[ ] property owners by creating an incentive for the State expeditiously to resolve or prosecute condemnation proceedings rather than ... possibly dragging its feet"); Md. Code (1974, 2003 Repl.Vol.), § 12–105 of the Real Property Article.

A complete taking, however, has not "occurred" and the statute of limitations does not begin to run until the taking becomes permanent or stabilized. In *United States v. Dickinson,* 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947) the Supreme Court held that the statute of limitations on the landowner's claim did not begin to run until the "taking" was complete, or in other words, until the full extent of the taking could be ascertained. 331 U.S. at 749, 67 S.Ct. at 1385, 91 L.Ed. at 1794. In that case, a cause of action was brought after the government built a dam that caused the water level in a river to rise over the course of several years, resulting in

the flooding of Dickinson's property. 331 U.S. at 746–47, 67 S.Ct. at 1384, 91 L.Ed. at 1792–93. The Supreme Court noted that "[t]he source of the entire claim—the overflow due to rises in the level of the river—is not a single event; it is continuous[, a]nd as there is nothing in reason, so there is nothing in legal doctrine, to preclude the law from meeting such a process by postponing suit until the situation becomes stabilized." 331 U.S. at 749, 67 S.Ct. at 1385, 91 L.Ed. at 1794.

The Supreme Court further clarified that "when the Government chooses not to condemn land but to bring about a taking by a continuing process of physical events, the owner is not required to resort either to piecemeal or to premature litigation to ascertain the just compensation for what is really 'taken.'" *Id.; see also Nw. LA Fish & Game Preserve Comm'n v. United States,* 446 F.3d 1285, 1291 (Fed.Cir.2006) (noting that the accrual date for the inverse condemnation cause of action was when the situation had "stabilized" and there is a "permanent taking," not when "there was only the possibility or threat of damage or a taking" or when the damages are "unquantifiable and speculative"). The United States Court of Appeals for the Federal Circuit (the "Federal Circuit") has illuminated the current state of the "stabilization" concept:

> [S]tablization occurs when it becomes clear that the gradual process set into motion by the government has effected a permanent taking, not when the process has ceased or when the entire extent of the damage is determined. Thus, during the time when it is uncertain whether the gradual process will result in a permanent taking, the plaintiff need not sue, but once it is clear that the process has resulted in a permanent taking and the extent of the damage is reasonably foreseeable, the claim accrues and the statute of limitations begins to run.

*Boling v. United States,* 220 F.3d 1365, 1370–71 (Fed.Cir. 2000).

In her Third Amended Complaint, Litz alleges several facts that are applicable to her inverse condemnation cause of

action. She alleges that "[a]s a result of the failure of the [defendants] to address severe pollution problems, Lake Bonnie is now polluted, the campground has been destroyed, and [her] property has been substantially devalued." Litz further alleges that because of the lack of income generated by the Campground due to the pollution, she was unable to pay the mortgage on the property. Litz's property was subsequently foreclosed upon, and Provident State Bank purchased the property at the foreclosure sale for $364,000. In Count VIII for inverse condemnation, Litz alleges that the defendants, "took from Litz the effective and reasonable use of her property without having formally instituted condemnation proceedings," and their "wrongful conduct has forced Litz to bear alone the cost of accepting sewage generated by residents in the Town[,]" a cost that should be born by the public as a whole. Moreover, Litz alleges that the defendants' "wrongful conduct effectively denied Litz the physical or economically viable use of her property."

Based on the allegations made on the face of the Complaint and reasonable inferences that can be drawn from them, one could conclude that the continuous pollution entering Litz's property was a partial, continuous taking which culminated with a final, complete taking when Litz's property was foreclosed upon in May 2010. A reasonable trier of fact could infer that Litz alleges two distinct takings: (1) the loss of the use and enjoyment of Lake Bonnie and the Campground; and (2) the foreclosure of her property in May 2010. There may have been a time before the three years prior to the filing of Litz's Complaint when it became clear that the first taking caused by the pollution became permanent or stabilized. Even if this initial partial taking is time-barred, however, a reasonable trier of fact could conclude that the final, complete taking of Litz's property occurred in May 2010, and is not time-barred by the three-year statutory period. That is not to say that a reasonable trier of fact could not also conclude that the taking of Litz's property was fully effectuated at some point prior to the three years of Litz's filing of her Complaint

when the pollution of her property became stabilized,[10] but based on the facts alleged and reasonable inferences drawn therefrom, the Motion to Dismiss should have been denied.

## CONCLUSION

In the present case, we address only what we have granted *certiorari* to address, namely whether it was proper to affirm the Town and the State defendants' motions to dismiss based on the statute of limitations. We, therefore, do not address whether there are any other grounds properly advanced by the Town or the State defendants upon which the Court of Special Appeals could have affirmed the trial judge's grant of the motions to dismiss. On remand, the intermediate appellate court shall have the opportunity to entertain any other arguments properly before the court. Additionally, there may be facts established at a later stage of the proceedings that indicate the statute of limitations bars some or all of Litz's causes of action. Because it was not clear from the face of her Complaint that Litz's causes of action for negligence, trespass, and inverse condemnation were barred by limitations, the Court of Special Appeals erred in affirming the motion to dismiss on those counts. Litz's causes of action for nuisance were barred by limitations, however, and the Court of Special Appeals was correct in affirming the motion to dismiss.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART, REVERSED IN PART. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. RESPONDENTS TO PAY COSTS IN THIS COURT.**

---

**10.** Counsel for the Town alleged in oral argument before this Court that it is clear from the Third Amended Complaint that the Campground was closed down in 1996 due to pollution. It is unclear what provision in the Third Amended Complaint Counsel relies on for this assertion.