Concurring and Dissenting Opinion by
WATTS, J.,
which BATTAGLIA and McDONALD, JJ., join.
Respectfully, I concur in part and dissent in part. I agree with the Majority that “the tort of trespass is covered by the notice requirement of the” Local Government Tort Claims Act (“the LGTCA”). Maj. Op. at 264, 131 A.3d at 929.[1] Assuming that we reach the issue, I also agree with the Majority that “a claim for inverse condemnation is not covered by the notice provisions of’ the LGTCA and the Maryland Tort Claims Act (“the MTCA”). Maj. Op. at 264, 131 A.3d at 929. I, however, would not reach that issue because I agree with the Court of Special Appeals that Gail B. Litz (“Litz”), Petitioner, failed to state a claim for inverse condemnation against the State and its agencies (together, “the State”). Accordingly, I would affirm the judgment of the Court of Special Appeals.[2]
*282 The Majority candidly acknowledges that it is writing on a blank slate. Specifically, the Majority states:
A difficulty with [ ] Litz’s claim of a “taking” fitting neatly within conventional thinking about inverse condemnation is that her allegations focus predominantly on the inaction of Respondents, rather than any affirmative action by those parties. There is no controlling Maryland law that we could find that sheds light on this wrinkle.
Maj. Op. at 267, 131 A.3d at 930 (emphasis added). The Majority proceeds to discuss out-of-State cases, and ultimately holds that Litz stated a claim for inverse condemnation based on Respondents’ inaction. See Maj. Op. at 267-71,131 A.3d at 930-33.
I would write on the blank slate differently. Specifically, I would hold that, to state a claim for inverse condemnation, a *283 plaintiff must allege that some kind of affirmative action by a governmental entity constituted a taking; I would not hold that an omission by a governmental entity can constitute a taking. The definition of “inverse condemnation,” examples of claims for inverse condemnation, and judicial restraint lead me to this result.
Earlier in this litigation, in Litz v. Md. Dep’t of Env’t, 434 Md. 623, 652, 76 A.3d 1076, 1093 (2013), we noted that an “[ijnverse condemnation is a taking without just compensation.” (Citation omitted). In other words, a claim for inverse condemnation is “a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency[.]” Id. at 653, 76 A.3d at 1093 (some emphasis added) (citation and internal quotation marks omitted). Implicit in the definition of “inverse condemnation” is the principle that, to engage in an inverse condemnation, a governmental entity must, in fact, “take” property through some kind of affirmative action, as opposed to an omission.
This Court’s precedent offers examples of claims for inverse condemnation, and it appears that every single one of them was based a governmental entity’s alleged active taking of property through some kind of affirmative action, as opposed to an omission. For example, in MacLeod v. City of Takoma Park, 257 Md. 477, 481, 478, 263 A.2d 581, 584, 582 (1970), a plaintiff raised a claim for inverse condemnation where a city demolished the plaintiffs fire-damaged building. In Reichs Ford Rd. Joint Venture v. State Roads Comm’n of the State Highway Admin., 388 Md. 500, 506, 505, 504, 880 A.2d 307, 310, 309 (2005), a plaintiff raised a claim for inverse condemnation where, without “formally exercising] its eminent domain powers[,]” the State Roads Commission of the State Highway Administration of the Maryland Department of Transportation took steps to condemn the plaintiffs property, thus allegedly *284 scaring off the plaintiffs existing tenant and future tenants.[3] Similarly, in Coll. Bowl, Inc. v. Mayor & City Council of Balt., 394 Md. 482, 489, 907 A.2d 153, 157 (2006), a plaintiff raised a claim for inverse condemnation where a city allegedly “us[ed] the threat of condemnation to force the [plaintiffs landlord] to undertake its own redevelopment of the [plaintiffs] building.”[4]
In Coll. Bowl, 394 Md. at 489, 907 A.2d at 157, this Court offered even more examples of inverse condemnation, stating:
[A]n inverse condemnation can take many different forms[: ]the denial by a governmental agency of access to one’s property, regulatory actions that effectively deny an owner [of] the physical or economically viable use of the property, conduct that causes a physical invasion of the property, hanging a credible and prolonged threat of condemnation over the property in a way that significantly diminishes its value, or ... conduct that effectively forces an owner to sell.
One of these types of inverse condemnation, a “regulatory taking,” occurs where a governmental entity adopts a “regulation [that] deprives the property owner of all viable economic use of the entire property at issue[.]” City of Annapolis v. Waterman, 357 Md. 484, 507, 745 A.2d 1000, 1012 (2000) (citation and footnote omitted); see also Muskin v. State Dep’t of Assessments & Taxation, 422 Md. 544, 566, 30 A.3d 962, 974 (2011) (“To determine whether a regulatory taking occurred, the Court must look to the facts of the individual case and consider the following factors: (1) the economic impact of the *285 regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the governmental action.” (Citation and internal quotation marks omitted)).
In each of these scenarios, a plaintiff attempts to hold a governmental entity responsible for something that the governmental entity did, not something that the governmental entity did not do. By contrast, here, Litz advances the novel legal theory that governmental entities “took” her property by omission or inaction. The Majority endorses Litz’s theory by “recognizing] an inverse condemnation claim based on alleged ‘inaction’ when one or more of the defendants has an affirmative duty to act under the circumstances.” Maj. Op. at 267, 131 A.3d at 930.
To me, this is essentially the equivalent of creating a private right of action[5] anytime that a plaintiffs property decreases in value as a result of a governmental entity’s noncompliance with a statute — even if nothing in the statute’s language or legislative history indicates that the General Assembly intended to create a private right of action. As the Majority notes, “[u]nder the current version of the Environment Article of the Maryland Code, the State is empowered to step-in to ensure the enforcement of the Federal Water Pollution Control Act.” Maj. Op. at 272-73, 131 A.3d at 933-34 (citing Md.Code Ann., Envir. (1984, 2013 Repl.Vol.) (“EN”) § 9-253). In turn, EN § 9-253 states in its entirety:
(a) In general. — For purposes of the Federal Water Pollution Control Act, the Secretary [of the Environment] is the State water pollution control agency in this State, (b) Granting of powers to Secretary. — The Secretary [of the Environment] has all powers that are necessary to comply with and represent this State under the Federal Water Pollution Control Act. (c) Other units of State government prohibited *286 from exercising powers. — Another unit of the State government may not exercise any power given to the Secretary [of the Environment] under this section.
(Paragraph breaks omitted). Nothing in EN § 9-253’s language indicates that the General Assembly intended to create a private right of action anytime that a plaintiffs property decreases in value as a result of the Secretary of the Environment’s noneompliance with the Federal Water Pollution Control Act.
Respectfully, the Majority neither mentions EN § 9-253’s legislative history nor addresses whether EN § 9-253’s legislative history indicates that the General Assembly intended to create a private right of action. Accordingly, there is no basis for affording the equivalent of a private right of action based on a governmental entity’s noncompliance with EN § 9-253. See Walton v. Mariner Health of Md., Inc., 391 Md. 643, 669, 894 A.2d 584, 599 (2006) (“Where the legislative history does not indicate any discussion whatsoever as to whether a statute gives rise to [ ] a[n implied private] right [of action], the fact that the [statute] is silent would weigh heavily against an intent by the [General Assembly] to create a private cause of action.”).
Simply stated, I would hold that an affirmative action by a governmental entity — i.e., a “taking” — is essential to a claim for inverse condemnation. Alleging an omission or inaction by the governmental entity is insufficient to state a claim for inverse condemnation. By holding otherwise, the Majority greatly expands the definition of inverse condemnation, the consequences of which are yet to be seen.
For the above reasons, respectfully, I concur in part and dissent in part.
Judge BATTAGLIA and Judge McDONALD have authorized me to state that they join in this opinion.

. As the Majority notes, in its petition for a writ of certiorari, the Town contended that Litz failed to state a claim for trespass. This Court denied the Town's petition for a writ of certiorari, and granted only Litz’s petition for a writ of certiorari, which did not present a question as to whether Litz stated a claim for trespass. Thus, like the Majority, I express no opinion on whether Litz adequately stated a claim for trespass, as that issue is not before this Court.
On a related note, the Majority lists, as one of the questions presented in Litz's petition for a writ of certiorari, the issue of "[wjhether the Court of Special Appeals exceeded the scope of this Court's remand order[.J” Maj. Op. at 263, 131 A.3d at 928. In a footnote, the Majority notes that this issue "was not briefed fully by all sides[,J” Maj. Op. at 264 n. 10, 131 A.3d at 928 n. 10, but the Majority states: “[W]e will exercise our discretion to decide the issues, which we have determined are before us properly[,J” Maj. Op. at 264 n. 10, 131 A.3d at 929 n. 10. The Majority, however, does not address the issue of whether the Court of Special Appeals exceeded the scope of this Court’s remand order. Given that the Majority expresses no opinion on this issue, neither do I.

. The Circuit Court for Caroline County ("the circuit court”) dismissed all of Litz's claims against all of the defendants. Litz appealed, and the Court of Special Appeals affirmed. Litz filed a petition for a writ of *282 certiorari, which this Court granted. See Litz v. Md. Dep’t of the Env't, 429 Md. 81, 54 A.3d 759 (2012). This Court affirmed in part, reversed in part, and remanded to the Court of Special Appeals. See Litz v. Md. Dep’t of Env’t, 434 Md. 623, 657, 76 A.3d 1076, 1096 (2013). On remand, the Court of Special Appeals, among other things: (1) affirmed the circuit court's dismissal of Litz’s claim for inverse condemnation against the State; (2) reversed the circuit court's dismissal of Litz's claims for inverse condemnation and trespass against the Town; and (3) remanded to the circuit court.
The Majority: (1) reverses the Court of Special Appeals’s affirmance of the circuit court’s dismissal of Litz’s claims for inverse condemnation against the State; (2) affirms the Court of Special Appeals’s reversal of the circuit court’s dismissal of Litz's claims for inverse condemnation and trespass against the Town; and (3) remands to the Court of Special Appeals with instructions to remand to the circuit court. See Maj. Op. at 279-80, 131 A.3d at 938-39. In other words, on remand in the circuit court, Litz's claim for inverse condemnation against the State, and her claims for inverse condemnation and trespass against the Town, will remain.
As the Majority does, I would affirm the Court of Special Appeals’s reversal of the circuit court’s dismissal of Litz’s claims for inverse condemnation and trespass against the Town; however, unlike the Majority, I would also affirm the Court of Special Appeals’s affirmance of the circuit court’s dismissal of Litz’s claims for inverse condemnation against the State. In other words, under my position, on remand in the circuit court, Litz’s claims for inverse condemnation and trespass against the Town would remain, but Litz’s claim for inverse condemnation against the State would not. As noted above in Footnote 1, this Court denied the Town's petition for a writ of certiorari; thus, the issue of whether Litz stated claims for trespass or inverse condemnation against the Town is not before this Court.

. Specifically, in Reichs Ford Rd. Joint Venture, 388 Md. at 504, 880 A.2d at 309, a lessee operated a gas station on the plaintiff's property. The State Roads Commission "met with ... the lessee ... to inform it of the intended condemnation[.]" Id. at 505, 880 A.2d at 309. The lessee "elected not to exercise its option to extend the lease term with [the plaintiff], apparently due to the looming specter of condemnation.” Id. at 505, 880 A.2d at 309. The plaintiff "claim[ed] that it was unable to lease the property as a gas station or for any other economically viable use due to the [State Roads Commission]’s plans.” Id. at 505, 880 A.2d at 310.

. In Coll. Bowl, 394 Md. at 491, 907 A.2d at 158, this Court concluded that "[t]here was no taking.”

. "A private right of action is a basis upon which a claimant may bring a claim.” State Ctr., LLC v. Lexington Charles Ltd.. P’ship, 438 Md. 451, 517, 92 A.3d 400, 439 (2014); see also Private Right of Action, Black's Law Dictionary (10th ed.2014) (“private right of action An individual’s right to sue in a personal capacity to enforce a legal claim.” (Bolding in original)).