*David Mills, et al. v. Galyn Manor Homeowner's Association, Inc.*, No. 1460, Sept. Term 2017. Opinion filed on December 21, 2018, by Berger, J.

CONSUMER PROTECTION - DEBT COLLECTION - HIRING ATTORNEYS TO COLLECT DEBTS

Both the Federal Fair Debt Collection Practices Act ("FDCPA") and the Maryland Consumer Protection Act ("MCPA") contain statutory exemptions for attorneys. Unlike the FDCPA, which only imposes liability on "debt collectors," the MCPA functions to hold any "person" liable whether or not that person holds herself out as a professional debt collector. *Compare* Md. Code (1975, 2013 Repl. Vol.), § 13-303, of the Commercial Law Article ("CL"), *with* 15 U.S.C. § 1692f.

As a matter of public policy, under the FDCPA, a defendant is not ordinarily liable for her attorney's illegal debt collection activities unless the defendant independently qualifies as a person subject to liability, *i.e.*, a debt collector. In contrast, when the defendant is independently subject to liability, *i.e.*, a "person" under the MCPA, the defendant may be held liable for her attorney's actions because the defendant's decision to hire an attorney to engage in debt collection may be predicated on avoiding liability.

STATUTORY EXEMPTIONS - VICARIOUS LIABILITY

The principal in an agency relationship is not shielded from liability for the agent's actions simply because the agent is statutorily exempt. The principal must establish an independent basis to receive the benefit of a statutory exemption.

UNFAIR DEBT COLLECTION - CHALLENGING THE VALIDITY OF A DEBT

The plaintiffs brought a viable Maryland Consumer Debt Collection Act claim where they challenged the defendant's right to file liens rather than the amount the defendant attempted to collect. In alleging that the statute of limitations under the Maryland Contract Lien had passed, the plaintiffs properly challenged the defendant's methods of debt collection.

BREACH OF CONTRACT - STATUTE OF LIMITATIONS - CONTINUING HARM

The "continuing harm doctrine" tolls the statute of limitations in cases where there are continuous unlawful acts, but not in cases where damages continue to accrue from a single earlier breach of contract.

CONVERSION - MISAPPROPRIATION OF GARNISHED FUNDS

The circuit court did not err in granting the defendant judgment as a matter of law on the plaintiffs' conversion claim. The plaintiffs alleged that a conversion occurred when the defendant failed to reduce the plaintiffs' debt with garnished funds. The plaintiffs did not have a right to possess the money at the time of the alleged misappropriation. The plaintiffs, therefore, had no conversion claim.

Circuit Court for Frederick County
Case No. 10-C-16-000961

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1460

September Term, 2017

_____

DAVID MILLS, ET AL.

v.

GALYN MANOR HOMEOWNER'S
ASSOCIATION, INC.

_____

Berger,
Arthur,
Leahy,

JJ.

_____

Opinion by Berger, J.

_____

Filed: December 21, 2018

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

This case arises out of an action filed in the Circuit Court for Frederick County by appellants, David and Tammy Mills (the "Homeowners") against appellee, Galyn Manor Homeowners Association, Inc. ("Galyn Manor"). In 2016, the Homeowners filed a complaint challenging the way Galyn Manor calculated and collected debts. The Homeowners specifically alleged violations of the Maryland Consumer Protection Act and the Maryland Consumer Debt Collection Act, in addition to claims of conversion and breach of contract.[1] Thereafter, Galyn Manor filed a motion for summary judgment. The circuit court granted Galyn Manor's motion on the debt collection and consumer protection claims. The court also disposed of the conversion and contract claims that arose prior to April 1, 2013, ruling that those claims were time-barred. Any claims arising after that date proceeded to trial. At trial, the court granted Galyn Manor's motion for judgment at the close of the Homeowners' case-in-chief, ruling that the Homeowners did not present sufficient evidence to satisfy the elements of either cause of action.

On appeal, the Homeowners pose four questions, which we set forth *verbatim*.

1. Did the Circuit Court err by concluding the Maryland Consumer Protection Act didn't apply to Appellant's claims of unfair and deceptive trade practices?

2. Did the Circuit Court err by concluding that the Maryland Consumer Debt Collection Act does not protect consumers who claim that a collector is collecting or attempting to collect an invalid debt?

---

[1] The Homeowners also sought an injunction and alleged malicious use of process, fraud, and defamation. The circuit court granted Galyn Manor judgment as a matter of law on each of these claims. The Homeowners do not appeal the disposition of these claims.

3. Did the Circuit Court err by ruling that all evidence of breach of contract, collection activity and conversion occurring prior to April 1, 2013 was time-barred?

4. Did the Circuit Court err by granting judgment in Appellee's favor on the breach of contract and conversion claims?

For the reasons explained herein, we affirm in part and reverse in part, and remand the case for further proceedings.

## FACTS AND PROCEEDINGS

The Homeowners own a home in Frederick, Maryland and are members of Galyn Manor, a homeowners' association ("HOA"). As members of the HOA, the Homeowners are bound by Galyn Manor's governing documents. The governing documents contain the bylaws and declaration of covenants, conditions, restrictions, and easements. The bylaws and declaration require members to comply with certain rules and restrictions, and to pay yearly assessment fees, due in quarterly installments. The declaration sets forth the way delinquent assessments accrue interest and late fees. Galyn Manor may also seek attorney's fees and costs in collecting unpaid assessments. To secure the payment of assessment fees, Galyn Manor holds a continuing lien on each member's property.

The governing documents also authorize Galyn Manor to fine members who violate certain sections of the declaration and bylaws. For example, fines are permitted when a member constructs a structure on a lot without the HOA's permission. The declaration includes trailers in its definition of a "structure." These fines may be enforced and collected in the same manner as unpaid assessments.

4

In February 2007, Galyn Manor's former management company -- Chambers Management, Inc. ("Chambers") -- discovered that the Homeowners regularly parked a large trailer on their property overnight. Chambers notified the Homeowners that this conduct was in violation of the HOA's governing documents. Chambers further advised the Homeowners that they would be subject to a $50 fine for each day that the trailer was parked on their property. The Homeowners were given thirty days to correct the violation. Chambers sent the Homeowners four more letters between April and October 2007, but the Homeowners did not take any corrective action. On October 24, 2007, Chambers sent another letter to the Homeowners, informing them that the Homeowners owed $645 in fines. The letter further provided that it was the Homeowners' final notice, that the Homeowners had until November 26 to pay, and that the letter served as "an attempt to collect a debt[.]"

In December 2007, Galyn Manor retained Andrews & Lawrence Professional Services, LLC ("Andrews") to provide legal services and to collect overdue assessments. By March 2008, the Homeowners accrued $1,500 in parking violations, while also falling behind on their quarterly assessment payments. Andrews notified the Homeowners in April 2008 that it represented Galyn Manor and that the Homeowners owed $2,632.84 in "assessments due, late fees and costs of collections, including attorney's fees, authorized by the Declaration." The letter did not specifically provide whether the fines from the parking violations were included in the stated amount. Andrews warned the Homeowners that it would accelerate the debt and file a lien if the Homeowners did not satisfy the debt within thirty days.

5

Andrews further provided the Homeowners with notice of their rights under the Maryland Contract Lien Act ("MCLA"). Specifically, Andrews advised the Homeowners that the debt would be presumed valid unless the Homeowners disputed its validity within thirty days. The Homeowners did not dispute the debt or otherwise respond to the letter within the thirty-day period. Andrews also attached a statement of the Homeowners' account, which itemized each individual charge. A statement of lien was filed and recorded in June 2008 in the amount of $3,581.88. This amount represented the amount due and owing at the time, i.e. $2,632.84, plus interest, late fees, attorney's fees, and costs.

The Homeowners responded to the notice on August 28, 2008. In a handwritten letter to Andrews, the Homeowners agreed to "make payment arrangements for all overdue quarterly HOA dues[,]" but "dispute[d] the validity of all other fines." The Homeowners further stated that they were preparing "factual evidence to proceed with a hearing." The Homeowners did not explain their failure to respond within the thirty-day period.

Andrews sent the Homeowners a second notice of acceleration and intent to file a lien in August 2010. Andrews stated that the Homeowners owed $4,256.88 in assessments, late fees, costs, and attorney's fees. Andrews again provided the Homeowners with their rights under the MCLA, and the Homeowners again failed to respond within thirty days. Thereafter, a statement of lien in the amount of $4,791.58 was filed and recorded.

On October 14, 2010, Galyn Manor filed a complaint against the Homeowners in the District Court for Frederick County. The District Court entered judgment in favor of Galyn Manor in the amount of $1,872.93. In July 2011, Andrews filed a writ of garnishment on behalf of Galyn Manor, seeking to garnish funds in the Homeowners' bank

6

account to satisfy the judgment. Shortly thereafter, the Homeowners asked Galyn Manor to rescind the garnishment. Galyn Manor agreed to rescind the garnishment on the condition that the Homeowners sign a promissory note. Thereafter, a promissory note for $3,429 was executed. The note obligated the Homeowners to make monthly payments of $130. The note also included a confession of judgment and a waiver of exemptions.

The Homeowners made two timely payments on the promissory note before defaulting. Galyn Manor filed a complaint for judgment by confession in the District Court for Frederick County, seeking $2,069 -- the remaining amount owed on the promissory note -- plus $413.80 in attorney's fees.[2] On July 18, 2013, the District Court awarded Galyn Manor judgment. Galyn Manor filed another District Court complaint in August 2014 and a consent judgment of $3,297.53 was entered on November 7, 2014. On May 14, 2015, Galyn Manor garnished $3,497.53 from the Homeowners' bank account. Despite the garnishment, the record demonstrates that the Homeowners remained at least $5,000 in arrears.

After nearly ten years of collection efforts, the Homeowners commenced this suit on April 1, 2016. In March 2017, the Homeowners filed an amended complaint alleging that Galyn Manor's collection efforts violated the Maryland Consumer Protection Act ("MCPA") and the Maryland Consumer Debt Collection Act ("MCDCA"). The Homeowners also brought conversion and breach of contract claims. Galyn Manor filed a

---

[2] After defaulting, the Homeowners reduced the underlying balance by making sporadic payments.

third-party complaint against Andrews, contending that Andrews agreed to indemnify Galyn Manor for any liability.

In a memorandum opinion, the Circuit Court for Frederick County granted Galyn Manor's summary judgment motion on the MCPA claim, noting that the statute specifically exempts attorneys. As a result, the circuit court held that Galyn Manor could not be held vicariously liable. The circuit court also awarded Galyn Manor judgment as a matter of law on the MCDCA claim, ruling that the Homeowners improperly used the statute as a vehicle to dispute the validity of the debt, whereas the statute only proscribes certain methods of collecting the debt.

Finally, the court granted Galyn Manor judgment as a matter of law on the conversion and breach of contract claims that arose before April 1, 2013, holding that those alleged breaches were barred by the statute of limitations. The Homeowners' claims that arose after April 1, 2013 proceeded to trial. At the close of the Homeowners' case, the court awarded Galyn Manor judgment as a matter of law, concluding that the Homeowners did not present sufficient evidence to satisfy the elements of a breach of contract or conversion claim. This appeal followed.

**STANDARD OF REVIEW**

The Homeowners challenge both the circuit court's grant of summary judgment and the grant of Galyn Manor's motion for judgment at trial. "[T]hese rulings were premised on purely legal issues," therefore, "we apply the same standard of review." *Golub ex rel. Golub v. Cohen*, 138 Md. App. 508, 516 (2001). Under the Maryland rules, a circuit court "shall enter judgment in favor of or against the moving party if the motion and response

8

show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2-501(f).

"The purpose of the summary judgment procedure is not to try the case or to decide the factual disputes, but to decide whether there is an issue of fact, which is sufficiently material to be tried." *Jones v. Mid-Atl. Funding Co.*, 362 Md. 661, 675 (2001) (citations omitted). Thus, "[i]n reviewing the grant of a summary judgment motion, we are concerned with whether a dispute of material fact exists," *id.* (citations omitted), and our review is *de novo. MAMSI Life & Health Ins. Co. v. Callaway*, 375 Md. 261, 278 (2003) (citing *Green v. H & R Block, Inc.*, 355 Md. 488, 502 (1999)). In doing so, we review the same record and issues of law as the trial court and are "tasked with determining whether the trial court reached the correct result as a matter of law." *Id.* (citing *Tyma v. Montgomery Cnty.*, 369 Md. 497, 504 (2002); *Murphy v. Merzbacher*, 346 Md. 525, 530-31 (1997)). We view the evidence in the light most favorable to the Homeowners as the nonmoving party. *Jones*, *supra*, 362 Md. at 676.

## DISCUSSION

## I.

The Homeowners first contend that the circuit court erred in granting Galyn Manor judgment as a matter of law on their MCPA claim. The MCPA prohibits deception or other misleading conduct in the collection of consumer debts. Md. Code (1975, 2013 Repl. Vol.), § 13-303(5), of the Commercial Law Article ("CL"). The Homeowners seek to hold Galyn Manor liable for Andrews' conduct in collecting debts under a theory of *respondeat superior*. Galyn Manor correctly points out that the MCPA does not apply to "[t]he

9

professional services of a … lawyer[.]" Galyn Manor contends that it did not engage in any collection efforts of its own, and further argues that the attorneys for Andrews are clearly exempt from liability under the statute. Consequently, Galyn Manor argues that it may not be held directly or vicariously liable. The circuit court agreed with Galyn Manor, holding:

> All of the collection activities against [the Homeowners] were conducted by [Andrews] on behalf of Galyn; however, the MCPA exempts attorneys from being held liable under the Act[.]
>
> * * *
>
> Therefore, Andrews cannot be held liable under [the] MCPA. Also, [the Homeowners] cannot impute liability to an attorney's client (Galyn) under [the] MCPA. *Fontell v. Hassett*, 870 F. Supp. 2d 395, 414 (D. Md. 2012) addressed the issue of an HOA being vicariously liable for the collection activities of their attorney. The Court held that since the law firm was not subject to liability, the law firm's client could not be held vicariously liable under the Act. For these reasons, this Court must grant summary judgment in favor of Galyn on Count V.

For the reasons that follow, we disagree and reverse the circuit court's entry of summary judgment in connection with the Homeowners' MCPA claim.

In *Fontell*, 870 F. Supp. 2d at 411-14, the United States District Court for the District of Maryland held that a HOA could not be held vicariously liable under the Fair Debt Collection Practices Act ("FDCPA") when the HOA did not independently qualify as a debt collector under the statute. The court observed that, from a policy perspective, "[a] debt collector should not be able to hire an attorney to engage in illegal debt collection practices on its behalf as a means of avoiding liability under the FDCPA." *Id.* at 412.

10

Nevertheless, the court held that "if the client is not a debt collector subject to liability under the FDCPA itself, then its decision to hire an attorney to engage in debt collection practices on its behalf would not be predicated on evading FDCPA liability, and imputing liability under those circumstances would not further the interests of the Act." *Id.*

Contrary to Galyn Manor's contention, *Fontell* does not stand for the proposition relied upon by the circuit court because Galyn Manor is potentially subject to liability under the MCPA. Unlike the FDCPA which only imposes liability on "debt collector[s,]" the MCPA -- with some statutory exemptions -- functions to hold any "person" liable, whether or not that person holds herself out as a professional debt collector. CL § 13-303; *compare* 15 U.S.C. § 1692f. Critically, the *Fontell* court noted that "[a] debt collector should not be able to hire an attorney to engage in illegal debt collection practices on its behalf as a means of avoiding liability under the FDCPA." *Fontell*, *supra*, 870 F. Supp. 2d at 412. In this case, Galyn Manor qualifies as a "person" subject to liability under the MCPA. Therefore, "it would be improper for [Galyn Manor] to evade liability … by hiring an attorney to commit violations on its behalf." *Id.* (citing *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994)).

In addition, Galyn Manor contends that a theory of recovery under *respondeat superior* is not viable where the agent is exempt from liability. In doing so, Galyn Manor cites to our recent opinion in *Women First OB/GYN Assocs., LLC v. Harris*, 232 Md. App. 647, 658 (2017), *cert. denied* 456 Md. 73 (2017). In our view, Galyn Manor's reliance on *Women First* is misplaced. In that case, we observed that "the Maryland appellate courts have recognized two situations in which the resolution of a tort claim against an employee

11

acting within the scope of his employment will preclude *respondeat superior* liability on the part of the employer: exoneration of the employee … and release of the employee[.]" *Id.* (citations omitted). Neither Galyn Manor nor Andrews argue that Andrews was exonerated or voluntarily released from liability. We did not address statutory exemptions in *Women First*, and nothing in our opinion in this case should be construed as creating a third category.

Notably, there are several reported opinions in Maryland that discuss whether a principal may be held vicariously liable when the agent is immune. In *D'Aoust v. Diamond*, 424 Md. 549, 607 (2012), the Court of Appeals held that "unless there is an independent source of immunity for the employer or principal, the cause of action premised on vicarious liability can be brought even if the employee or agent is entitled to immunity." More recently, the Court of Appeals revisited its holding in *D'Aoust* to determine whether an employer could assert an employee's immunity under the Good Samaritan Act.[3] *TransCare Md., Inc. v. Murray*, 431 Md. 225 (2013). The Court rejected the employer's "attempts to distinguish *D'Aoust* on the basis that it concerned common law immunity rather than statutory immunity[,]" holding that "its conclusion applied to the concept of immunity generally as it relates to causes of action based on vicarious liability." *Id.* at 242.

Accordingly, the Court held that the employer could be held vicariously liable even though the tortfeasor was immune from liability. *Id. See also James v. Prince George's Cnty.*, 288 Md. 315, 332 (1980) ("As a general rule … the master remains liable for the

---

[3] Immunity under the Good Samaritan Act is codified in CJ § 5-603.

servant's conduct even though the servant is himself not liable because of a personal immunity."). We, therefore, hold that the circuit court erred, as a matter of law, in allowing Galyn Manor to assert Andrews' personal exemption. In short, Galyn Manor is not shielded from liability under the MCPA simply because Andrews is exempt. *TransCare, Md.*, 431 Md. at 243.[4]

Galyn Manor and Andrews also urge us to conclude that the Homeowners' debts did not arise out of a consumer transaction. They further contend that, assuming the debts arose out of consumer transactions, their claim under the MCPA is nevertheless barred by the statute of limitations.[5] The circuit court did not address any of these issues in its memorandum opinion. As a result, we limit our opinion to the sole basis relied upon by the circuit court in granting Galyn Manor's motion for summary judgment. We, therefore, reverse the circuit court's order granting summary judgment on the Homeowners' claim under the MCPA, and remand the Homeowners' MCPA claim for the circuit court's consideration consistent with this opinion. Nevertheless, on remand, the circuit court may certainly consider these issues in the context of any additional motion for summary judgment filed in this case.

---

[4] To the extent that Galyn Manor or Andrews contend that a statutory exemption differs from statutory immunity, we disagree. *See Catonsville Nursing Home, Inc. v. Loveman*, 349 Md. 560, 576 (1998) ("BLACK'S LAW DICTIONARY 571 (6th ed. 1990), as relative to the case at bar, defines exemption as: 'Freedom from a general duty or service; immunity from a general burden.'"). Clearly, the Court of Appeals has treated "immunity" and "exemption" as synonyms, and we similarly do so here.

[5] Galyn Manor and Andrews further maintain that the Homeowners have not presented any issue of material fact precluding judgment as a matter of law in connection with their claim under the MCPA.

## II.

We next consider whether the circuit court erred in awarding Galyn Manor judgment as a matter of law on the Homeowners' MCDCA claim. The Homeowners contend that Galyn Manor violated the MCDCA when Galyn Manor attempted to collect the Homeowners' overdue assessments, levied unauthorized fines against the Homeowners' account, charged interest and late fees, and filed liens that were allegedly in violation of the MCLA. In relying on a case from the United States District Court for the District of Maryland, the circuit court ruled as follows:

> [The Homeowners'] claims under [the] MCDCA are based on the argument that the underlying debt and associated fees, fines, liens, and costs were invalid. But [the] MCDCA provides no basis for liability in contesting the underlying debt but rather, only the methods used to collect any alleged debt. Accordingly, this Court will grant summary judgment in favor of Galyn on [the MCDCA claim].

(citing *Fontell v. Hassett*, 870 F. Supp. 2d 395 (D. Md. 2012)).[6]

The principal issue raised by the Homeowners on appeal is whether the circuit court improperly interpreted *Fontell*, and misread CL § 14-202(8) in ruling that the statute may not be used to challenge the underlying validity of a debt. The Homeowners further

---

[6] In *Fontell*, *supra*, 870 F. Supp. 2d at 405, the United States District Court for the District of Maryland examined, in *dicta*, whether a plaintiff may bring a MCDCA claim to challenge the validity of a debt. In that case, the plaintiff brought a MCDCA claim against a HOA arguing that the HOA charged the plaintiff an assessment that the plaintiff had already paid in full. *Id.* The plaintiff attributed the charge to a "billing error." *Id.* The court dismissed the plaintiff's MCDCA claim stating that the MCDCA "is meant to proscribe certain *methods* of debt collection and is not a mechanism for attacking the validity of the debt itself." *Id.* (emphasis in original).

contend that even if the circuit court correctly interpreted the statute, only some of the Homeowners' claims challenged the validity of the underlying debt, while several claims challenged the methods of collection.

CL § 14-202(8) provides, in pertinent part, that "[i]n collecting or attempting to collect an alleged debt a collector may not … [c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist[.]" Under CL § 1-201(b)(34), the definition of "right" includes "remedy." "'Remedy' 'means any remedial right to which an aggrieved party is entitled with or without resort to a tribunal.'" CL § 1-201(b)(32). "To state a claim under the [statute], [the Homeowners] must establish two elements: (1) [Galyn Manor] did not possess the right to collect the amount of debt sought; and (2) [Galyn Manor] attempted to collect the debt knowing that [it] lacked the right to do so." *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 420 (D. Md. 2018) (citation omitted).

Notably, there is only one reported opinion in Maryland that discusses whether a plaintiff may use the MCDCA to challenge the validity of a debt. In *Allstate Lien & Recovery Corp. v. Stansbury*, 219 Md. App. 575, 578 (2014), *aff'd* 445 Md. 187 (2015), a vehicle repair shop billed an owner of a vehicle for repairs, but the owner was unable to pay the bill in full. The shop filed a "garageman's lien" with the Motor Vehicle Administration and included a $1,000 processing fee in the lien amount.[7] *Id.* at 579. The vehicle owner sued the repair shop alleging that the garageman's lien statute did not

---

[7] The "garageman's lien" statute is codified in CL § 16-202.

authorize processing fees, and therefore, the shop did not have the right to enforce the lien. *Id.* at 582.

In its opposition, the repair shop relied on *Fontell*, contending that the vehicle owner could not use the MCDCA to challenge the validity of the debt. *Id.* at 591. We expressly noted that *Fontell* was "not helpful" because the vehicle owner never "disputed that he owed the underlying debt." *Id.* Instead, the vehicle owner challenged "the method of collecting the debt, i.e., … including [processing] fees as part of the lien." *Id.* Accordingly, we held that the repair shop "did not have the right to include processing fees in the lien." As a result, the vehicle owner could succeed on his MCDCA claim. *Id.*

More recently, the United States District Court for the District of Maryland applied our holding in *Allstate Lien* to determine what type of challenge is appropriate under CL § 14-202(8). In *Barr*, *supra*, 303 F. Supp. 3d at 419, the plaintiffs brought an MCDCA action against a debt collector, alleging that the collector attempted to "collect past due payments, late fees, and a per month payment they did not owe." *Id.* at 420. The plaintiffs argued that the collector failed to credit the amounts the plaintiffs already paid. *Id.* The court dismissed the plaintiffs' MCDCA claim, holding that "the [plaintiffs] dispute[d] the amount owed, and this is not sufficient to state a MCDCA claim." *Id.* Nevertheless, the court observed that the plaintiffs' claim would have survived dismissal had the plaintiffs claimed that "that the amounts [the debt collector] sought to collect exceed[ed] the amount owed as a result of the debt collector's inclusion of an unauthorized charge." *Id.* (citation omitted).

Here, Galyn Manor contends that the Homeowners may not recover under the MCDCA because the Homeowners are challenging the validity of the underlying debt. Only a few of the Homeowners' allegations, however, actually challenge the amount of debt sought. Indeed, the Homeowners stated in their amended complaint that Galyn Manor lacked the legal right to file liens because the statute of limitations had passed under the MCLA.

In our view, the claim by the Homeowners is similar to the processing fee in *Allstate Lien*. In *Allstate Lien*, we held that a party brought a viable MCDCA claim where he acknowledged that he owed the underlying debt, but disputed the inclusion of a $1,000 processing fee in the lien. Similarly, the Homeowners acknowledge that they owed several months of delinquent assessment fees. Critically, however, the Homeowners challenged Galyn Manor's right to file liens because the statute of limitations under the MCLA had passed. Accordingly, the Homeowners may pursue a MCDCA claim because they challenge Galyn Manor's methods in filing liens. Therefore, the circuit court erred in ruling -- as a matter of law -- that all of the Homeowners' MCDCA allegations challenged the validity of the underlying debt.

We further note that the Homeowners' primary contention is that Galyn Manor levied fines against the Homeowners that were not authorized by the HOA's governing documents. On remand, we direct the circuit court to consider whether these fines are the type of "unauthorized" charges covered by the statute.

We, therefore, vacate and remand the circuit court's granting of judgment as a matter of law on the Homeowners' MCDCA claim. We further direct the circuit court to

17

determine, in light of *Allstate Lien* and *Barr*, whether there is any dispute of material fact as to whether Galyn Manor had the right to collect each debt, and if not, whether Galyn Manor knew that it did not have such right.[8]

## III.

The circuit court held that the Homeowners' breach of contract claims that arose before April 1, 2013 were barred by the statute of limitations. In a complaint for breach of contract, the Maryland Code dictates the time period in which a claim must be filed:

> A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time with which an action shall be commenced.

Md. Code (1973, 2013 Repl. Vol.), § 5-101, of the Courts & Judicial Proceedings Article ("CJ").

The Homeowners had three years from the date of accrual of their cause of action to file a timely complaint. The date of accrual begins "on the date when the plaintiff knew or, with due diligence, reasonably should have known of the wrong." *Bacon v. Arey*, 203 Md. App. 606, 652 (2012) (citation omitted).

The Homeowners argue that Galyn Manor breached the declaration when it levied fines, fees, interest, costs, and attorney's fees on their account. The record reflects that the

---

[8] We do not address the Homeowners' contention that Galyn Manor had any knowledge as to the validity of the debt. We have limited our opinion to the sole basis relied upon by the circuit court in granting Galyn Manor's motion for summary judgment. As discussed, *supra*, the Homeowners' claim need not proceed to trial if the circuit court finds no genuine dispute of material fact and determines that Galyn Manor is entitled to judgment as a matter of law.

Homeowners were served with several letters in 2007 and 2008. The letters provided the amounts the Homeowners owed in fines for parking a trailer on their property. The Homeowners also fell behind on their quarterly assessment payments and were subsequently notified that the unpaid assessments were accruing interest, late fees, and attorney's fees. The basis of the alleged breach of contract is that the declaration did not authorize these types of charges.

The Homeowners discovered the alleged breach by no later than August 2008 when they responded to a notice of acceleration and intent to file a lien. The Homeowners sent a letter on August 28, 2008 -- after the lien had already been filed -- responding to the notice. In the signed letter, the Homeowners agreed to "make payment arrangements for all overdue quarterly HOA dues[,]" but "dispute[d] the validity of all other fines." Clearly, the statute of limitations on the breach of contract claim began to run in 2008.

In their attempt to revive the breach of contract claim, the Homeowners urge us to apply the "continuing harm doctrine." This doctrine tolls the statute of limitations in cases where there are continuing violations. *See Litz v. Md. Dep't of Env't*, 434 Md. 623, 646 (2013). Maryland's theory of continuing breach of contract is a limited one, however. To apply the continuing harm doctrine, the breach itself -- rather than the damages -- must be continuing in nature. If the allegation "is more properly understood as the 'continuing effects of a single earlier act'" then the limitations period is not tolled. *Bacon*, *supra*, 203 Md. App. at 662 (quoting *MacBride v. Pishvaian*, 402 Md. 572, 584 (2007) ("Continuing violations that qualify under this theory are continuing unlawful acts, for example a monthly over-charge of rent, not merely the continuing effects of a single earlier act."),

*abrogated on other grounds by Litz*, *supra*, 434 Md. 623). Further, "[b]are assertions that there is a continued course of conduct … [are] not enough to toll the statute of limitations." *Bacon*, *supra*, 203 Md. App. at 662.

Galyn Manor imposed fines on the Homeowners after the Homeowners repeatedly parked a trailer on their property. The Homeowners contend that the imposition of these fines violated the declaration, thereby establishing the breach of contract claim. These fines then allegedly "begat interest, costs, attorney's fees, and the filing of illegal liens[,]" which, in the Homeowners' view, created a subsequent breach of contract claim. Despite warning Galyn Manor in August 2008 that they planned to formally contest the validity of the fines, the Homeowners waited until April 2016 to file their complaint. The Homeowners now argue that the statute of limitations for this claim was tolled because Galyn Manor's efforts in collecting the payment of the fines, by adding additional charges and filing liens, constitute a continued harm. We disagree.

The continuing harm doctrine is not applicable in this case. In arguing that the continuing harm doctrine applies, the Homeowners rely solely on the Court of Appeals' opinion in *Litz*. We are not persuaded by the Homeowners' reliance on *Litz* in their attempt to frame Galyn Manor's efforts in collecting the payment of the fines as continuous breaches. There is simply no continuing duty of the sort explained in *Litz* that precludes judgment as a matter of law. *See Litz*, 434 Md. at 648-49 (applying the doctrine in a nuisance and negligence case, where the defendant had a continuous, ongoing duty to control the discharge of contaminated ground and surface water).

In contrast, our recent opinion in *Walton v. Network Solutions*, 221 Md. App. 656 (2015) is far more applicable. In that case, the defendant sent the plaintiff a string of email solicitations. *Id.* at 674. The plaintiff requested that his email address be removed from the mailing list, and one of the defendant's employees confirmed that his address would be removed. *Id.* Nevertheless, the plaintiff still received a similar email the next month, and he continued to receive emails for two more years. *Id.* The plaintiff then brought a MCPA claim against the defendant alleging that the employee's prior statement was a misrepresentation in violation of the MCPA. *Id.* at 675. We rejected the plaintiff's attempt to apply the continuing harm doctrine because the defendant made only one misrepresentation. *Id.* at 676-77. We held that the allegation of a single breach was insufficient to toll the limitations period even though damages may have continued to accrue. *Id.*

In this case, there was only one breach from which all of the Homeowners' alleged harm flowed, and that was Galyn Manor's imposition of fines related to the parking of the trailer. Those fines were levied in 2007 and 2008 -- eight years before the Homeowners filed their complaint. While we dealt with a different claim in *Walton*, the key facts are substantially the same. As we held in *Walton*, it is insufficient to claim that damages continue to flow from a single breach. In short, Galyn Manor's various attempts to collect payment of the fines constitute the "continuing effects of a single earlier act." *Bacon*, 203 Md. App. at 662. As such, Galyn Manor's actions do not, however, constitute "continuing unlawful acts." *Id.* *See also Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 316-17 (D. Md. 2014) (declining to apply the continuing harm doctrine in a federal debt

collection case, holding that the "statute of limitations is not reset by each communication where … the subsequent communications are continued efforts to collect the same debt[.]").

The Homeowners further maintain that it is "unreasonable, illogical, unjust, or inconsistent with common sense" to impose a three-year statute of limitations on their breach of contract claim, while providing Galyn Manor with twelve years to foreclose on its liens. We refrain from entertaining this policy argument that is better addressed to the legislature. *Griffin v. Bierman*, 403 Md. 186, 211 (2008) ("Our duty is not to substitute our own judgment of what the law ought to be for what the Legislature declares it should be.").

The circuit court, therefore, did not err in granting Galyn Manor's motion for summary judgment because the claims that arose before April 1, 2013 were barred by the statute of limitations. Thus, the court properly limited the claims that arose after April 1, 2013 to proceed to trial.

The Homeowners also appear to contend that even if the fines were legitimate, Galyn Manor breached the declaration because the declaration "does not sanction the filing of MCLA liens based on non-assessments." We disagree. Without addressing whether the fines were authorized, Galyn Manor maintains that it imposed the fines pursuant to Article III of the declaration. That article specifically provides that the fines are "subject to enforcement in the same manner as assessments under Article IX" of the declaration. Article IX affords Galyn Manor the right to file liens pursuant to the MCLA to collect assessment payments. These articles, taken together, demonstrate that the declaration did

22

provide Galyn Manor with the right to file liens to collect payment of the fines because the fines "were contractually treated as assessments."  *See, e.g.*, *Agrelo v. Affinity Mgmt. Servs., LLC*, 841 F.3d 944, 951-52 (11th Cir. 2016) ("By agreeing to the terms of the governing documents, the homeowners acknowledged that a failure to comply with HOA requirements could result in a fine that would be deemed and treated as an individual assessment.").  Thus, the filing of liens did not constitute a breach of the declaration.

**IV.**

The circuit court allowed the Homeowners' breach of contract claims that arose after April 1, 2013 to proceed to trial.  After the Homeowners presented their case-in-chief, the circuit court awarded Galyn Manor judgment as a matter of law.  In the questions presented and conclusion of their brief, the Homeowners state that the circuit court erred in granting Galyn Manor's motion for judgment on the breach of contract claim.

The Homeowners do not, however, provide any argument explaining how the circuit court erred.  We, therefore, decline to address the merits of this perceived error on appeal. *See* Md. Rule 8-504(a)(6) (requiring an appellate brief to contain an "[a]rgument in support of the party's position on each issue"); *Catler v. Arent Fox, LLP*, 212 Md. App. 685, 712 (2013) ("Because they have failed to brief us appropriately, we conclude that appellants have waived their right to appeal from this portion of the court's order."); *Fed. Land Bank of Balt., Inc. v. Esham*, 43 Md. App. 446, 457-58 (1979) ("In prior cases where a party

23

initially raised an issue but then failed to provide supporting argument, this Court has declined to consider the merits of the question so presented but not argued.").[9]

## V.

We lastly consider whether the circuit court erred in granting Galyn Manor's motion for judgment on the Homeowners' conversion claim. This claim centers around the consent judgment entered on November 7, 2014, and the subsequent garnishment. Shortly after the District Court entered the judgment, Galyn Manor garnished funds from the Homeowners' bank account to satisfy the judgment. The Homeowners contend that Galyn Manor misappropriated the garnished funds when it applied the funds to the arrears on the amount owed by the Homeowners rather than the overdue assessments. In the Homeowners' view, this alleged misappropriation constitutes an unlawful conversion. We disagree.

"A claim for conversion requires proof of the following elements: (1) the plaintiff's right to possess the disputed property, and (2) an intentional taking of that property by a person without authority or permission." *Travel Comm., Inc. v. Pan Am. World Airways, Inc.*, 91 Md. App. 123, 183 (1992). The property at issue is the $3,497.53 that Galyn Manor garnished from the Homeowners' bank account. The Homeowners' claim fails because they are unable to demonstrate that they had the right to possess the garnished funds at the time of the alleged conversion. Indeed, the Homeowners admitted that they owed the

---

[9] The Homeowners appear to also take issue with the circuit court's order barring any conversion claims that arose before April 1, 2013. The Homeowners have not provided us with any argument. We, therefore, decline to address this perceived error for the reasons explained, *supra*.

$3,497.53 and they never disputed the subsequent garnishment. While the Homeowners take issue with Galyn Manor's methods in allocating the garnished funds, this nonetheless does not create a viable conversion claim.

Immediately after the garnishment, the Homeowners no longer had any possessory right. Critically, the alleged conversion occurred when Galyn Manor credited the money to the Homeowners' general arrears rather than the overdue assessments. That is, the alleged conversion took place *after* the money had been legally garnished. Accordingly, we hold that the circuit court did not err in granting Galyn Manor's motion for judgment because the Homeowners did not have a right to possess the money when it was allegedly converted. *See Balt. & Ohio R.R. Co. v. Equitable Bank, N.A.*, 77 Md. App. 320, 327 (1988) ("In order to recover for conversion one must either have been in actual possession or have had the right to immediate possession in the converted asset."). [10]

## VI.

Finally, Galyn Manor filed a third-party complaint against Andrews, contending that Andrews agreed to indemnify Galyn Manor for any liability. The circuit court dismissed the third-party complaint because the Homeowners failed to establish any liability against Galyn Manor. In this opinion, we reverse the grant of summary judgment in connection with the Homeowners' MCPA and MCDCA claims. As a result, we reinstate Galyn Manor's third-party complaint against Andrews in connection with these claims

---

[10] We need not address Galyn Manor's argument that money may not be the subject of a conversion claim because the Homeowners' claim fails on other grounds.

pursuant to the indemnification clause contained in the Professional Services Agreement between Galyn Manor and Andrews.

**JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE SPLIT EQUALLY BETWEEN THE PARTIES.**